IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| KENNETH JOHNSON, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) Case No. 3:17-CV-460-NJR-DGW |
| LILLIAN OVERALL and JOHN BALDWIN, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter comes before the Court on the Report and Recommendation of Magistrate Judge Donald G. Wilkerson, which recommends denying the Motion for Summary Judgment on the issue of exhaustion of administrative remedies filed by Defendant Lillian Johnson (Doc. 48). For the following reasons, the Court adopts the Report and Recommendation and denies Defendant's motion.

## BACKGROUND

On May 3, 2017, Plaintiff Kenneth Johnson filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging Defendants violated his civil rights (Doc. 1). After a preliminary review of his complaint pursuant to 28 U.S.C. § 1915A, Johnson was allowed to proceed on his claims that Defendant Lillian Overall was deliberately indifferent to his serious dental needs and that the Illinois Department of Corrections, through Director John Baldwin, took "short cuts" in providing dental and health care to inmates to save money.

Johnson alleges that on Friday, April 7, 2017, Dr. Overall, the prison dentist, extracted six of his teeth (Doc. 1). When he asked if she could extract three teeth that day

and the other three later, Dr. Overall said no because it was against policy (*Id.*). Johnson then claims Dr. Overall had difficulty removing the final tooth and had to give him extra Novocain (*Id.*). Afterward, he could not eat because he was in pain (Doc. 63, p. 9-10). Although Dr. Overall gave Johnson pain medicine, he ran out by that Sunday night (*Id.*).

On April 12, 2017, Johnson returned to Dr. Overall for a follow-up visit because he was still having pain in his mouth, his gums were sore, and something did not feel right (*Id.*; Doc. 1). He claims Dr. Overall examined his mouth and determined she would need to cut into his gums to remove part of a broken tooth or bone that remained in his gums from the last tooth she extracted (*Id.*). She then put him on the list to have surgery (Doc. 1). While Johnson stated in his complaint that there was "no telling" how long he would have to wait for surgery, he also said he would have to be in pain until June 7, 2017 (*Id.*).

On April 16, 2017, Johnson filed an emergency grievance complaining that Dr. Overall extracted six teeth at the same time and broke the last tooth, leaving a piece of tooth or bone in his mouth (Doc. 63, p. 9-10). Johnson noted that every time he tried to eat, his mouth hurt so bad he felt like crying (*Id.*). His pain was a 9 on a scale of 1 to 10. As for the relief requested, Johnson stated: "I do not like the dental [sic] in my mouth. I'm terrified of her going back to do any work at all. I will like my dentures and my plate for the bottom on the left side." (*Id.*).

On April 17, 2017, Warden S. Waggoner determined Johnson's grievance was indeed an emergency and should be expedited (*Id.*, p. 10). On April 21, 2017, Grievance counselor J. Drawn responded: "Offender was explained these rules previously—3 month healing time before dentures are made. Follow up appointments are to be made

by submitting for sick call. Grievance has no merit." (*Id.*).

On May 3, 2017, 17 days after submitting his emergency grievance, Johnson filed the complaint in this case (Doc. 1). He subsequently appealed his April 2017 grievance, along with a grievance dated December 28, 2017, to the Administrative Review Board on February 5, 2018 (Doc. 63, p. 8). The ARB rejected the grievances as not being submitted in the proper timeframe and without the final facility responses (*Id.*).

On February 13, 2018, Dr. Overall filed a motion for summary judgment on the issue of exhaustion of administrative remedies (Doc. 48). Dr. Overall argued Johnson did not exhaust his administrative remedies when he took no further action after the counselor responded on April 21, 2017. Specifically, Dr. Overall asserted that Johnson never appealed the denial of his grievance to the ARB.[1] Additionally, even if Johnson claimed he prepared materials for the ARB but was somehow thwarted by prison officials, Johnson still filed suit too soon, i.e., before the grievance process was complete.

Johnson did not timely respond to Defendant's motion, but Magistrate Judge Wilkerson *sua sponte* gave him an extension of time until May 10, 2018, to respond. On May 14, 2018, Johnson filed an affidavit dated March 7, 2018, which was mailed on May 9, 2018 (Doc. 63). The affidavit stated that in October 2017 Johnson asked the Grievance Officer Mrs. Rowcliffe about his April 2017 grievance, but she did not know about it (*Id.*, p. 6). Mrs. Rowcliffe said she would look in Johnson's master file and that she should have a copy because she was the Grievance Officer at the time (*Id.*). However, the grievance was not in Johnson's file. On October 26, 2017, Johnson asked counselor J. Drawn about the grievance (*Id.*). At that point, J. Drawn "goes up to his office and comes

---

[1] Dr. Overall likely was unaware that Johnson had appealed his grievance on February 5, 2018.

right back down . . . and goes right over to Mrs. Rowcliffe and give her a copy of the grievances that Mr. J. Drawn had for 6 ½ months. On the 10-26-17 was the first time Mrs. Rowcliffe saw it as well as I did on 10-26-17 in a long time."[2] (*Id.*). Dr. Overall moved to strike this response as untimely (Doc. 64).

## THE REPORT AND RECOMMENDATION

On July 13, 2018, Magistrate Judge Wilkerson entered a Report and Recommendation recommending first that Dr. Overall's motion to strike be denied, as the prison mailbox rule requires the Court to consider Johnson's response timely filed. To the extent Dr. Overall was complaining about the extension of time that was *sua sponte* granted, Magistrate Judge Wilkerson stated that a *pro se* plaintiff is granted some leeway in filing documents, and Dr. Overall demonstrated no prejudice in Johnson being allowed additional time to respond to her motion for summary judgment.

Magistrate Judge Wilkerson next recommended that Dr. Overall's motion for summary judgment be denied. Magistrate Judge Wilkerson first found that Dr. Overall did not argue the contents of the grievance were insufficient to put her on notice of the claims against her. Instead, Dr. Overall's only argument was that the denial of emergency grievances must be appealed through the same process as non-emergency grievances, and Johnson did not appeal his grievance within the required timeframe. Therefore, Johnson did not exhaust his administrative remedies.

---

[2] Johnson's affidavit seems to imply that in addition to the Grievance Officer never receiving the counselor's response, he also did not receive a response until October 26, 2017—more than six months after he filed it. If the grievance process had been made unavailable to Johnson, the Court could deny summary judgment on this basis alone. However, Magistrate Judge Wilkerson held a hearing on Johnson's motion for preliminary injunction in June 2017 where Johnson testified that he wrote a grievance in April 2017 and "they told me I was just—I had to wait in the process of my gums to heal and everything . . . ." (Doc. 16, p. 6). This testimony implies Johnson was indeed aware of the counselor's response in June 2017.

In reviewing the Illinois Administrative Code ("Code"), Magistrate Judge Wilkerson noted that if the Chief Administrative Officer ("CAO") determines a grievance is an emergency, he or she shall "expedite processing of the grievance and *respond to the offender indicating what action shall be or has been taken*." 20 ILL. ADMIN. CODE § 504.840(b) (emphasis added). Magistrate Judge Wilkerson inferred that this section means the grievance would then be investigated by a Grievance Officer, who would then make a recommendation to the CAO as to whether the relief requested in the grievance should be granted or denied. The CAO would then provide the inmate with a final facility response. In this case, though, there is no evidence that the grievance was investigated by a Grievance Officer or that the CAO ever told Johnson what action shall be or has been taken. Instead, Johnson only received a response from the counselor. And the Code, as amended on April 1, 2017, is silent as to what an inmate should do at that point. Because Dr. Overall made no argument that Johnson was nonetheless required to appeal the counselor's response to the ARB, Magistrate Judge Wilkerson recommended her motion be denied.[3]

On July 27, 2018, Dr. Overall objected to the Report and Recommendation (Doc. 67). First, Dr. Overall argues that Johnson filed this lawsuit on May 3, 2017, but did not appeal the denial of his grievance until February 5, 2018. Thus, not only did Johnson fail to appeal the grievance before filing his lawsuit, he failed to wait for a decision from the ARB before filing suit, in violation of Section 504.850.

Second, Dr. Overall objects to Magistrate Judge Wilkerson's belief that the CAO

---

[3] Magistrate Judge Wilkerson also stated that Johnson "got what he wanted" when the Warden deemed his grievance an emergency; thus, there was nothing adverse to appeal. The Court agrees with Defendants, however, that Johnson was not seeking a procedural victory but rather a win on the merits of his grievance, which was ultimately denied by the counselor.

would only send an emergency grievance to a Grievance Officer to investigate rather than a counselor. But, even if there were some rule requiring the CAO to take such action, Section 504.805 of the Code permits the CAO to delegate responsibilities to another person or designate another person to perform the duties specified. 20 ILL. ADMIN. CODE § 504.805. Therefore, the CAO could have the counselor perform the duties of the Grievance Officer, if necessary.

Third, Dr. Overall argues that the Code is *not* silent as to what an inmate must do after his grievance is denied. Dr. Overall notes that the denial of Johnson's grievance ends with the statement: "Grievance has no merit." (Doc. 63, p. 9). The Code instructs that "[g]rievances on issues deemed without merit may be returned as denied to the sender without further investigation." 20 ILL. ADMIN. CODE § 504.830(a). Thus, once Johnson received this denial, he was required to proceed to the appellate review step in order to fully exhaust his administrative remedies. Even if he was confused by the grievance procedure, he took no action until February 2018, well past the 30-day timeframe set forth in the Code.

Finally, Dr. Overall argues that Magistrate Judge Wilkerson misinterpreted the ARB's response to the grievance when he found that the ARB's comment about a lack of a final facility response applied to Johnson's April 2017 emergency grievance. Instead, Dr. Overall argues, the ARB must have been referring to the other grievance Johnson was appealing, because that grievance had no response on it at all. Dr. Overall argues the April 2017 grievance at issue here was only rejected because Johnson failed to submit it in a timely manner.[4]

---

[4] Dr. Overall also objects to Magistrate Judge Wilkerson's conclusion that the content of the grievance was

On August 1, 2018, Johnson filed a "motion," which this Court construes as a response to Dr. Overall's objection (Doc. 68). In his response, Johnson recites the same facts he attested to in his affidavit—that the counselor did not give Johnson's grievance to the Grievance Officer Mrs. Rowcliffe until October 2017, six and a half months after he filed it.

**LEGAL STANDARD**

Where timely objections are filed, this Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). If no objection is made, the Court reviews the Report and Recommendation only for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). In reviewing the Report and Recommendation, the Court must look at all of the evidence contained in the record and give fresh consideration to those issues to which specific objections have been made. *Id.* (quoting 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)). The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

---

sufficient to place her "on notice." Dr. Overall argues that allowing an "on notice" standard undermines the entire grievance procedure. But Magistrate Judge Wilkerson's point was only that Dr. Johnson *did not argue* the contents of the grievance were insufficient. Accordingly, the argument was forfeited, and the grievance was presumed to be sufficient. In any event, the Court is unclear why Defendant is making this argument. While the Code requires a grievance to contain factual details including what happened, when, where, and the name of each person who is the subject of the complaint, *see* 20 ILL. ADMIN. CODE § 504.810(c), that is exactly what Johnson did in this case. He named Dr. Overall as the dentist who pulled six of his teeth at the same time and left part of a broken tooth or bone in his gums. As such, this objection will not be addressed further.

**Summary Judgment**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). In responding to a motion for summary judgment, the nonmoving party may not simply rest upon the allegations contained in the pleadings, but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322–26; *Anderson*, 477 U.S. at 256–57.

## DISCUSSION

Dr. Overall did not object to Magistrate Judge Wilkerson's recommendation that her Motion to Strike be denied, so the Court reviews that decision only for clear error. Finding no such error, the Court adopts that portion of the Report and Recommendation and denies the Motion to Strike (Doc. 64).

As for Dr. Overall's Motion for Summary Judgment, the Court must review the Report and Recommendation *de novo*. After carefully reviewing the record, the Court agrees with Magistrate Judge Wilkerson that Johnson exhausted his administrative remedies because the Illinois Administrative Code ("Code"), as revised on April 1, 2017,

has no mechanism for an inmate to appeal the decision of a counselor.

Under the previous version of the Code, an inmate had to first attempt to resolve a complaint informally with his counselor. 20 ILL. ADMIN. CODE § 504.810(a) (2003). If the complaint was not resolved, the inmate had to file a <u>written grievance with the Grievance Officer</u> within 60 after the discovery of the incident, occurrence, or problem that gave rise to the grievance. *Id.* § 504.810(b) (emphasis added). The Grievance Officer then would advise the CAO in writing of his or her findings on the grievance. *Id.* § 504.830(d). The CAO would inform the inmate of his or her decision on the grievance within two months of it having been filed. *Id.* An inmate could appeal the decision of the CAO in writing within 30 days to the ARB for a final decision. *Id.* § 504.850(a).

Under the revised version of the Code, an inmate is not required to attempt to resolve the complaint informally with his counselor before sending a written grievance to the Grievance Officer. Instead, within 60 days after discovery of the incident giving rise to the grievance, an inmate "may file a written grievance on a grievance form" and it "shall be addressed <u>to his or her institutional counselor</u>." § 504.810(a) (emphasis added). Only "complaints concerning discipline or sexual abuse shall be sent by the offender directly to the Grievance Officer." *Id.*

Section 504.830(a) then provides that "[g]rievances shall be reviewed and a written response provided to the offender." Additionally, grievances "on issues deemed without merit may be returned as denied to the sender without further investigation." *Id.* at § 504.830(a). The problem is that the Code is then silent as to what happens once a counselor denies a grievance as having no merit. There is nothing directing an inmate to send his rejected grievance to the Grievance Officer or CAO for further review. Likewise,

there is nothing requiring a counselor to send the grievance to the Grievance Officer or CAO. Yet, at the same time, an inmate cannot appeal a grievance without a decision from the CAO. *Id.* at § 504.850(a). Section 504.850(a) on Appeals states that if, "after receiving the response of the *Chief Administrative Officer*, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." *Id.* at § 504.850(a) (emphasis added). If a grievance is returned by a counselor and no further investigation is done, then there is no response from the CAO to appeal.

In contrast, grievances reviewed directly by a Grievance Officer (i.e., grievances concerning discipline or sexual abuse) still fall under the provisions of Section 504.830(e). That section requires the Grievance Officer to consider the grievance and report his or her findings and recommendations in writing to the CAO. *Id.* at § 504.830(e). The CAO then reviews the findings and advises the offender of his or her decision in writing. *Id.* At that point, there is a response from the CAO that the inmate can appeal.

In essence, lawmakers changed the Code to require inmates to submit certain grievances directly to a counselor instead of the Grievance Officer, but did not update the Code to require inmates to then send the counselor's response to the Grievance Officer and CAO for further review. Or, if the legislature did not intend for further institutional review of grievances denied by counselors, they did not revise the "Appeals" section to permit an offender to appeal the decision of the CAO *or a counselor, in instances where the grievance is determined by the counselor to have no merit.*

This problem is further exacerbated when an emergency grievance is involved, as

it was in this case. Section 504.840(b) on Emergency Procedures provides that if a grievance is determined to be an emergency, the CAO shall expedite processing of the grievance and respond to the offender, indicating what action shall be or has been taken. That never happened here. Although the CAO determined Johnson's grievance was an emergency and expedited processing of it, the CAO never responded to Johnson indicating what action had been or would be taken. Instead, only the counselor responded that his grievance had "no merit." To the extent Dr. Overall argues that Section 504.805 allows the CAO to delegate her responsibilities, she provides no evidence that is what occurred here. Moreover, there was nothing on the grievance to indicate to Johnson that the counselor's response constituted a response from the CAO.

The Court understands that this interpretation of the Code leads to an absurd result: an inmate whose grievance is rejected by a counselor as having no merit can immediately file a lawsuit, while an inmate whose grievance contains serious allegations involving discipline or sexual abuse must wait for his grievance to be addressed by the Grievance Officer, the CAO, and the ARB before he can file suit. Certainly the legislature did not intend this result, but that is an issue for the legislature, not the courts, to resolve.

In this case, Johnson never received a written response from the CAO indicating what action would be taken as to his emergency grievance. He only received a response from his counselor, and there is no provision in the Code requiring an inmate whose grievance is rejected by a counselor to do anything further. Accordingly, the Court finds that Johnson's administrative remedies were exhausted when he received the counselor's response on April 21, 2017.

## CONCLUSION

For these reasons, the Court **ADOPTS** the Report and Recommendation (Doc. 66) and **DENIES** the motion for summary judgment filed by Defendant Dr. Lillian Overall (Doc. 48). Defendant's Objection (Doc. 67) is **OVERRULED,** and her Motion to Strike (Doc. 64) is **DENIED**.

**IT IS SO ORDERED.**

DATED:   August 3, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**