IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3: 17-CV-460-MAB |
| | ) |
| LILLIAN OVERALL and JOHN BALDWIN, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Currently pending before the Court are the motions for summary judgment filed by Defendants Dr. Lillian Overall and John Baldwin (Docs. 77, 85), as well as, the Motion to Add New Material (Doc. 87) and the "Motion Requesting Judicial Recognition & Decisions of Q's 12 Points, Conclusion & Table of Authorities" (Doc. 91) filed by Plaintiff Kenneth Johnson. For the reasons stated below, the motions for summary judgment are granted and Plaintiff's motions are denied.

## PROCEDURAL BACKGROUND

Plaintiff Kenneth Johnson filed this *pro se* civil rights action pursuant to 42 U.S.C. §1983 in May 2017 (Doc. 1). Plaintiff alleged that that Dr. Lillian Overall, the prison dentist at Vandalia Correctional Center, mishandled the extraction of his tooth, which left Plaintiff in constant pain. He further alleged that surgery to correct the problem was being delayed. He also alleged that the Illinois Department of Corrections ("IDOC") takes

"short cuts" in providing dental and health care to inmates because of lack of money, which led to Plaintiff incurring a lengthy delay in obtaining treatment to relive his painful condition. Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on an Eighth Amendment deliberate indifference claim against Dr. Overall and John Baldwin in his official capacity as the Director of the IDOC (Doc. 5).

Dr. Overall filed her motion for summary judgment on the merits of Plaintiff's claim on November 29, 2018 (Doc. 77), and Director Baldwin filed his on December 26, 2018 (Doc. 85). Plaintiff then filed his "Motion to Add New Material" on December 26, 2018 (Doc. 87), and his "Motion Requesting Judicial Recognition & Decisions of 12 Points, Conclusion & Table of Authorities" on January 22, 2019 (Doc. 91).

## I. MOTION TO ADD NEW MATERIAL (Doc. 87)

On December 12, 2018, Plaintiff filed a Motion for Leave to File Amended Complaint (Doc. 83). It was denied the next day because Plaintiff did not submit his proposed amended complaint (Doc. 84). Plaintiff then filed his "Motion to Add New Material" on December 26, 2018 (Doc. 87), which is presently before the Court. Plaintiff states that he is trying "to name Wexford and their dental policy" and "add Wexford and their dental policy as part of my paperwork I [already] have on file in my case, not to submit an entire new complaint" (Doc. 87).

It appears to the Court Plaintiff is trying make a piecemeal amendment to his complaint in order to add Wexford as a new Defendant in this case. However, the Court does not accept piecemeal amendments or supplements to a complaint. *See* SDIL-LR 15.1.

Furthermore, Plaintiff's attempt to add a new defendant comes eight months after his deadline for doing so expired (*see* Doc. 38), and Plaintiff did not provide any explanation as to why he did not attempt to add Wexford sooner (*see* Doc. 87). *See Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014) (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011) (holding that after the deadline for amending the pleadings has elapsed, the court should first consider whether "good cause" for the amendment exists under Rule 16(b)(4) before considering whether justice requires leave to amend under Rule 15). Allowing Plaintiff to amend in order to pursue a new defendant at this point would require reopening discovery and would further protract this litigation, prejudicing both the existing Defendants as well as the Court. *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) ("[E]leventh hour additions . . . are bound to produce delays that burden not only the parties to the litigation but also the judicial system and other litigants.") (citation omitted).

For these reasons, Plaintiff's "Motion to Add New Material" is denied.

II. **"MOTION REQUESTING JUDICIAL RECOGNITION . . . " (Doc. 91)**

In this motion, Plaintiff poses twelve questions to the Court, such as whether Defendants' conduct was intentional, willful, malicious, or reckless? Or whether Defendants' conduct was reasonable, careful, and conscientious? Plaintiff then goes on to offer his conclusion that Defendants were negligent and failed to provide adequate medical treatment, post-treatment, referrals, physical therapy, and rehab. Plaintiff then offers his "Table of Authorities," which references a number of seminal cases on the issue of deliberate indifference to a serious medical need, such as *Estelle v. Gamble*, 429 U.S. 97

(1976) and *Farmer v. Brennan*, 511 U.S. 825 (1994).

Based on the contents of the motion, the Court opts to construe it as Plaintiff's response in opposition to both Defendants' motions for summary judgment. It is therefore denied as moot.

### III.   DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Docs. 77, 85)

#### A.  FACTUAL BACKGROUND

The facts recited here are undisputed unless otherwise noted.

Plaintiff was an inmate in the IDOC incarcerated at Vandalia Correctional Center ("Vandalia") (Doc. 79-1, pp. 8–9). Defendant Lillian Overall was a dentist employed at Vandalia, and Defendant John Baldwin was the director of the IDOC (Doc. 79-2, p. 1).

In August 2016, Plaintiff requested a partial denture for his upper arch (Doc. 79-2, p. 2). Dr. Overall determined that a partial denture was not possible because periodontal disease present in Plaintiff's remaining upper arch teeth made them incapable of supporting a partial (*Id.*; Doc. 79-3, p. 2). Dr. Overall recommended extracting Plaintiff's remaining teeth in his upper arch and then fitting him for a total upper arch denture (Doc. 79-1, pp. 11–12; Doc. 79-2, p. 2; Doc. 79-3, p. 2). However, Plaintiff refused to have his teeth extracted when he returned to the dental unit on October 14, 2016, for the procedure (Doc. 79-1, p. 12; Doc. 79-2, p. 2; Doc. 79-3, p. 2).

Plaintiff returned to Dr. Overall on March 21, 2017, again complaining of continued pain (Doc. 79-2, p. 2). The dental notes indicate that there was severe decay in all remaining upper teeth and they could not be restored (Doc. 79-3, p. 2). Plaintiff was scheduled to have his remaining upper teeth extracted on April 7, 2017 (Doc. 79-3, pp. 2,

8). Plaintiff agreed to the extraction (Doc. 79-3, p. 8), and on April 7, 2017, Dr. Overall extracted six teeth as planned (Doc. 79-3, p. 2). Plaintiff testified that all of the teeth came out easily, with no problems, until Dr. Overall got to the last one or two teeth (Doc. 79-1, pp. 21, 26). Plaintiff claims a tooth (perhaps two) broke and Dr. Overall had difficulty getting all of the pieces out (*Id.* at pp. 21, 26–29). However, he never saw the teeth that he alleges Dr. Overall broke during the extraction (*Id.* at p. 27). Following the extractions, Dr. Overall gave Plaintiff a two day lay-in pass to restrict him from his work detail and provided him with Motrin to manage his pain (Doc. 79-1, pp. 32–33; Doc. 79-3, pp. 5, 9).[1]

Five days later, on April 12, 2017, Plaintiff retuned to Dr. Overall for a follow-up visit due to continued pain in his mouth (Doc. 79-1, pp. 22; Doc. 79-2, p. 2). Dr. Overall examined Plaintiff, determined that a bone spicule was present in Plaintiff's mouth, removed it,[2] and then provided him with an additional supply of Motrin 400 mg (Doc. 79-2, p. 2; Doc. 79-3, pp. 3, 6).

After Plaintiff filed a grievance on April 16th regarding his dental care, Dr. Overall met with him three days later and explained to him that his extraction site was healing normally, and any discomfort he felt was likely due to the "occlusion between his bottom

---

[1] More specifically, she prescribed 30 tablets of Motrin 400mg, and instructed Plaintiff to take one to two tablets every 4–6 hours as needed for pain (Doc. 79-3, p. 5).

[2] A bone spicule or spur is a small, sharp fragment of bone that works its way to the surface of the gums following a tooth extraction. They are common, particularly after a difficult tooth extraction, and treatable through a visit to the dentist. Emily Boge, *Finding a Bone Spur in Gum Tissue: Here's What to Do*, COLGATE, https://www.colgate.com/en-us/oral-health/procedures/tooth-removal/bone-spur-in-gum-tissue-why-what-to-do-0818- (last visited March 13, 2020). *Accord* Doc. 79-2, p. 2 ("The presence of bone spicules following extraction is a normal finding, especially when the patient, like Plaintiff, suffers from severe periodontal disease, including bone loss.").

teeth and top gums" because he had no teeth on his upper arch (Doc. 79-2, pp. 2-3; Doc. 79-3, pp. 1, 3).[3] She further explained to him that placement of an upper denture would likely alleviate any discomfort he had, and that he was already scheduled to begin the process of fabricating and placing a denture (Doc. 79-2, pp. 2-3; Doc. 79-3, pp. 1, 3). She also gave him additional pain medication (Doc. 79-3, p. 1). A week later, on April 24, 2017, Plaintiff returned to see Dr. Overall to have a cavity on a lower tooth repaired (Doc. 79-3, p. 3). Dr. Overall also noted that Plaintiff's upper gum was bleeding because a tooth was coming into contact with one of the extraction sites (*Id.*). She once again renewed his prescription for Motrin (*Id.*).

Plaintiff's gums had to properly heal before he could get fitted for the upper denture (Doc. 79-1, p. 38). The dental records show that Plaintiff returned to Vandalia's dental unit on July 7, 2017—three months after his teeth were extracted—to begin the process of making the upper arch denture (Doc. 79-2, p. 3). The process of fabricating and placing a complete upper denture continued through the summer of 2017 (*Id.*). While he waited for his denture, it was painful to eat (Doc. 79-1, p. 40). Plaintiff cannot recall when he received his denture, but believes it was in the beginning of 2018 (*Id.* at p. 54).

The denture is meant to be worn at all times, including while eating, although it does not have to be worn while sleeping (Doc. 79-2, p. 3; *see also* Doc. 79-1, p. 44–45). Although instructed to keep his denture in, Plaintiff does not always do so (Doc. 79-1, pp.

---

[3] Occlusion is the way the teeth meet when the lower jaw and upper jaw come together. Vickie Parrish Foster, *An Overview of Dental Anatomy: Occlusion*, https://www.dentalcare.com/en-us/professional-education/ce-courses/ce500/occlusion (last visited March 13, 2020).

44–45). Plaintiff testified that, he still has pain in his upper gums when he chews food without his dentures; he thinks there is still a piece of bone in there and says he can feel it (*Id.* at pp. 41–42). But he never feels the pain if he is wearing the denture (*Id.* at p. 44). Plaintiff is able to buy pain medication from the commissary as needed (*Id.* at p. 45). Plaintiff testified at his deposition in October 2018 that the denture fits "fine" (Doc. 79-1, p. 45). He has no pain in his upper gums or jaw when speaking normally (*Id.* at p. 48). And Dr. Overall never ignored his complaints of pain or denied him pain medication (*Id.* at p. 53).

With respect to Director John Baldwin, Plaintiff testified that he is suing Baldwin because he is Dr. Overall's "boss" and should be held accountable for her alleged deliberate indifference (Doc. 79-1, pp. 60, 62). Plaintiff has never met Director Baldwin or had any contact with him (*Id.* at p. 60; Doc. 86-3, pp. 1-2). Plaintiff has no knowledge of the Department of Corrections' overall budget or how much money is spent on dental care for inmates (Doc. 79-1, p. 59; Doc. 86-3, pp. 2–3). He has no knowledge of any official IDOC policy or procedure that encourages its healthcare providers to take short cuts to save money (Doc. 79-1, pp. 59–60; Doc. 86-3, p. 3; Doc. 86-4, pp. 7-10). Director Baldwin did not sign off on any of Plaintiff's appeals to the Administrative Review Board (Doc. 86-5, p. 1). And Plaintiff has nothing to show that Director Baldwin knew about his medical issues before he filed this lawsuit (Doc. 79-1, p. 61).

### B. DISCUSSION

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R.

CIV. P. 56(a). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted). In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

The Eighth Amendment's proscription against cruel and unusual punishment imposes an obligation on states "to provide adequate medical care to incarcerated individuals." *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1072 (7th Cir. 2012) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials violate this proscription when they act with deliberate indifference to the serious medical needs of an inmate." *Holloway*, 700 F.3d at 1072 (citations omitted). To succeed on a claim for deliberate indifference, a plaintiff must demonstrate that they suffered from an "objectively, sufficiently serious" medical condition and that the defendant acted with a "sufficiently culpable state of mind." *Id*.

Neither Dr. Overall nor Director Baldwin dispute that Plaintiff was suffering from a serious medical condition (*see* Docs. 77, 85). Therefore, the only question for the Court is whether Dr. Overall and Director Baldwin acted with deliberate indifference to Plaintiff's serious dental needs.

"A prison official is deliberately indifferent only if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In other words, "[t]he defendant must know of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference." *Whiting*, 839 F.3d at 662 (quoting *Farmer*, 511 U.S. at 837). "This subjective standard requires more than negligence and it approaches intentional wrongdoing." *Holloway*, 700 F.3d at 1073 (citation omitted). It is "something akin to recklessness." *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 50 (2019) (quoting *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

1. **John Baldwin**

Director Baldwin is entitled to summary judgment. By Plaintiff's own admission, he is seeking to hold Director Baldwin liable based on a theory of *respondeat superior*, meaning that he is liable for Dr. Overall's misconduct simply because he is her superior (Doc. 79-1, pp. 60, 62). However, an individual cannot be held liable under § 1983 merely based on their supervisory role of others under a theory of *respondeat superior* or vicarious liability. *Lennon v. City of Carmel, Indiana*, 865 F.3d 503, 507–08 (7th Cir. 2017) ("[T]here is no vicarious liability in a suit under section 1983."); *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) ("[T]here is no theory of *respondeat superior* for constitutional torts.") (citation omitted). Plaintiff also admitted and there is no evidence to suggest that Director Baldwin knew about his dental issues before he filed this lawsuit (Doc. 79-1, p. 61; Doc. 86-5). *See Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (supervisors can be held

liable if they are "personally responsible for the deprivation of the constitutional right," meaning they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see."). Finally, Plaintiff admitted that he knew nothing about the IDOC's budget for inmate dental care or any policy or procedure that encouraged dental providers to take short cuts to save money (Doc. 79-1, pp. 59–60; Doc. 86-3, p. 3; Doc. 86-4, pp. 7-10). *See Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017) (*en banc*) (officials can be sued in their official capacity under § 1983 if the constitutional deprivation was caused by official policy or practice).

Consequently, there is no basis for holding Director Baldwin liable for deliberate indifference under § 1983 and he is entitled to summary judgment.

### 2. Dr. Lillian Overall

When it comes to medical professionals, the deliberate indifference standard has been described as the "professional judgment" standard. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008). Treatment decisions are "presumptively valid" and entitled to deference so long as they are based on professional judgment and do not go against accepted professional standards. *Johnson v. Rimmer*, 936 F.3d 695, 707 (7th Cir. 2019) (citation omitted); *Rasho v. Elyea*, 856 F.3d 469, 476 (7th Cir. 2017); *Roe v. Elyea*, 631 F.3d 843, 859 (7th Cir. 2011). "By definition a treatment decision that is based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment." *Rasho*, 856 F.3d at 476 (citation omitted). *See also Roe*, 631 F.3d 843 at 859 ("[I]t is implicit in the professional judgment standard itself . . . that inmate medical care decisions must be fact-based with

respect to the particular inmate, the severity and stage of his condition, the likelihood and imminence of further harm and the efficacy of available treatments.") "A medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Rasho*, 856 F.3d at 476 (citation omitted). *See also Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) ("A medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances'" (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998))).

The Court previously determined during the threshold review of Plaintiff's complaint that Dr. Overall's actions in extracting Plaintiff's teeth did not amount to unconstitutional deliberate indifference (Doc. 5). That remains true. The evidence before the Court suggests that Dr. Overall's decision to extract Plaintiff's teeth was based on professional judgment after examining Plaintiff and determining that a full upper denture was his only option because he had periodontal disease in his remaining teeth that made it impossible for them to support a partial denture. There is nothing in the record that suggests her treatment decision was blatantly inappropriate. Furthermore, while Plaintiff believes Dr. Overall somehow botched the extraction of his final two teeth, there is no evidence to support his belief; it is complete speculation. *Bass v. Joliet Pub. Sch.Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014) ("Speculation is no substitute for evidence at the summary judgment stage."); *Stephens v Erickson*, 569 F.3d 779, 786 (7th

Cir. 2009) (noting that "inferences relying on mere speculation or conjecture will not suffice"). Not all tooth extractions are simple and straightforward; some teeth can be quite difficult to remove. And diseased teeth can be fragile and prone to breaking during the extraction process.[4] Just because a tooth breaks during the extraction procedure does not mean the dentist provided substandard or constitutionally inadequate care.

Furthermore, the evidence shows that following the extraction, Dr. Overall provided Plaintiff with pain medication and a lay-in permit so that he would be exempt from working during his initial recovery. When he complained of continuing pain, she promptly responded and removed the offending bone spicule and gave Plaintiff additional pain medication. When he continued to complain of pain, she promptly responded and saw him twice more during the month of April. She examined him and determined that no bone spicule remained and the extraction site was healing at a normal rate. Dr. Overall gave Plaintiff more pain medication and counseled him about his discomfort and explained it was due to his bottom teeth coming in contact with his top gums where there were no longer any teeth. She further explained that the upper denture would likely alleviate this pain, which is in fact what happened. Plaintiff testified that he does not experience any pain when he wears his denture. The only time Plaintiff experiences pain is when he *chooses* to chew food without his upper arch denture in place. To the extent there was a delay in Plaintiff receiving his denture, there is nothing in the

---

[44] Donna Pleis, *When Surgical Extraction of Teeth is Necessary*, COLGATE https://www.colgate.com/en-us/oral-health/procedures/tooth-removal/when-surgical-extraction-of-teeth-is-necessary-0215.

record that suggests it was Dr. Overall's fault or something that she could control but opted to ignore.

In sum, the evidence in the record suggests that the pain Plaintiff endured in having his teeth extracted and waiting to receive his denture was completely normal and not the result of any deliberate indifference on Dr. Overall's part. She is therefore entitled to summary judgment.

## Conclusion

Plaintiff's "Motion to Add New Material" (Doc. 87) is **DENIED**.

Plaintiff's "Motion Requesting Judicial Recognition & Decisions of Q's 12 Points, Conclusion & Table of Authorities" (Doc. 91) is **DENIED as moot** and construed as Plaintiff's response in opposition to Defendants' motions for summary judgment.

The motions for summary judgment filed by Defendants Dr. Lillian Overall and John Baldwin (Docs. 77, 85) are **GRANTED**. Plaintiff's claim against them is **DISMISSED with prejudice** and judgment will be entered in their favor.

There being no claims or Defendants remaining in this action, the Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

IT IS SO ORDERED.

DATED: March 13, 2020

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**